UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED

00 APR 26 AM 9: 50

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

APR 2 6 2000

COMPREHENSIVE ANESTHESIA            )
SERVICES, P.C.; ALLEN CAMPBELL,     )
M.D.; SUBBA R. CHENUMOLU, M.D.;     )
R. JAMIE CLARK, M.D.; MEENASHKI     )
DAYAL, M.D.; M. SCOTT DEGRAAFF,     )
M.D.; C. TEMPLE ESTOPINAL, M.D.;    )
MICHAEL HOGER, D.O.; KYLE M.        )
JONES, M.D.; CHARLES I. LEE,        )
M.D.; PETER C. LOUX, D.O.; JAMES    )
T. McGRIFF, M.D.; GRIGOR            )
MERIJANIAN, M.D.; MICHAEL L.        )
MUELLER, M.D.; JESS T. POWER,       )
M.D.; D. KEITH RATHEL, M.D.;        )
H. MASON ROBERTSON, M.D.; DANIEL    )
SPEAKMAN, M.D.; PETER L. WICK,      )Civil Action No. CV-00-S-241-NE
M.D.; B. BRUCE WINGO, M.D.;         )
HENRY J. YOUNES, D.O.,              )
                                    )
       Plaintiffs,                  )
                                    )
vs.                                 )
                                    )
CRESTWOOD HEALTHCARE, L.P.,         )
                                    )
       Defendant.                   )

MEMORANDUM OPINION

    This action is before the court on defendant's motion to

dismiss plaintiffs' first amended complaint (Doc. No. 32).  For the

reasons stated below, the court finds that defendant's motion is

due to be granted in part, with respect to plaintiffs' federal

claims, but denied as to plaintiffs' state law claim, over which

this court declines to exercise supplemental jurisdiction.

## I.  STANDARD OF REVIEW

A court may dismiss a complaint for failure to state a claim only if it is clear that no relief can be accorded plaintiffs under any set of facts that could be proven consistent with the allegations in the complaint. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986) ("[W]e may not ... [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief."). The threshold requirements for a complaint to survive a Rule 12(b)(6) motion to dismiss thus are "exceedingly low." *Williams v. City of Montgomery*, 21 F. Supp. 2d 1360, 1363 (M.D. Ala. 1998). The following factual allegations are accepted as true for purposes of this motion.

## II.  FACTUAL BACKGROUND

Plaintiff Comprehensive Anesthesia Services, P.C. ("Comprehensive"), is an Alabama professional corporation. The individual anaesthesiologists who are shareholders of that professional corporation have provided anesthesia services in Huntsville, Alabama, for many years. Approximately four and a half

2

years ago, Comprehensive's anesthesiologists, some of whom have joined as plaintiffs in this action, were granted staff memberships and clinical privileges at Crestwood Medical Center, L.L.C ("the Hospital").  The Hospital is "an acute care, 120-bed for-profit medical facility" located in Huntsville, Alabama.[1]  The Hospital is owned and operated by defendant, Crestwood Healthcare, L.P., "a Delaware limited partnership."[2]

In exchange for the issuance of staff memberships and clinical privileges, plaintiffs "agreed to abide by the Hospital's Medical Staff Bylaws."[3]  "The Bylaws explicitly set forth, among other things, '[t]he procedures by which, and criteria pursuant to which, appointments and Clinical Privileges may be modified or terminated.'"[4]  Pursuant to the by-laws, plaintiffs may exercise those privileges which have been approved by the Hospital's board of trustees.[5]  The board previously authorized plaintiffs "to provide perioperative anesthesia activities and impatient IV/vascular access,"[6] which consisted of:

(a) rendering Anesthesia Services to patients needing

---

[1] Plaintiffs' First Amended Complaint (Doc. No. 40) ¶ 6.  (*See also* Doc. No. 26.)

[2] *Id.* ¶ 3.

[3] *Id.* ¶ 8.

[4] *Id.* (citations omitted).

[5] *Id.* ¶ 9.

[6] *Id.* ¶ 8.

surgical procedures scheduled for the Hospital's operating rooms, Monday through Friday, 24 hours/day, 7 days/week, 365 days/year[7]; (b) providing Anesthesia Services to patients having elective surgeries performed after hours and on weekends in the operating rooms at the request of surgeons on the Medical Staff; and (c) providing Anesthesia Services on an on-call basis to patients needing emergency surgeries, 24 hours/day, 7 days/week, 365 days/year.[8]

The Hospital historically referred patients to plaintiffs for anesthesia services on "an as needed basis," and plaintiffs were paid by the patients, not the Hospital.[9]

In January of 1999, however, the State of Alabama approved a request by the Hospital to construct a new obstetrical/neonatal unit.

The new obstetrical unit will be located in a different wing of the Hospital from the Hospital's existing surgical suites. The new obstetrical unit will include five labor and delivery rooms, three labor/delivery/recovery/post-partum suits, ten postpartum beds, ten antepartum beds, twelve gynecology beds, two C-section rooms, three Level II nursery bassinets, and seven well-baby nursery bassinets.[10]

The new unit will require an anesthesiologist "to be physically present in the obstetrical unit 24 hours/day, 7 days/week, 365 days/year. ... Unlike the Anesthesia Services, which are rendered

---

[7] For the record, the court notes the inconsistency between the references to "Monday through Friday" and "7 days/week, 365 days/year" in this portion of plaintiffs' amended complaint.

[8] *Id.* ¶ 11.

[9] *Id.* ¶ 13.

[10] *Id.* ¶ 15.

4

to patients on an as needed basis, the On-Site Coverage allows the Hospital to offer additional services and is a service provided to the Hospital with no assurance of any level of patient encounters."[11]

The Hospital's Chief Executive Officer approached Comprehensive about providing the additional coverage for the new obstetrical unit. "[T]he CEO indicated that, as a non-negotiable condition of being allowed to continue rendering Anesthesia Services at the Hospital, Comprehensive would be required to provide the On-Site Coverage at no charge to the Hospital."[12] Comprehensive refused to provide the additional service at no cost to the Hospital, contending that such an agreement would violate the Medicare-Medicaid Anti-kickback Statute ("Anti-kickback Statute"), 42 U.S.C. §§ 1320a-7, 1320a-7a, and 1320a-7b. Comprehensive offered to provide the on-site coverage for its fair market value, but the Hospital declined the offer and "subsequently issued a Request for Proposals for Anesthesia Services and On-Site Coverage."[13] The request for proposals indicated that "the successful bidder would receive an exclusive agreement to provide the Anesthesia Services in return for the provision of free On-Site

---

[11] Id. ¶ 16 (emphasis supplied).
[12] Id. ¶ 18.
[13] Id. ¶ 20.

Coverage."[14]

The Hospital considered three proposals, including one submitted by Comprehensive, but ultimately awarded the contract to Michael Pesce & Associates, "a California-based company that imports anesthesiologists to provide services at hospitals throughout the United States."[15]    The Hospital notified Comprehensive of its decision by letter, dated January 3, 2000:

> On the effective date of the new contract, which is currently projected for February 1, 2000, all Medical Staff members currently holding clinical privileges for perioperative anesthesia activities and clinical privileges for inpatient IV/vascular access will have those privileges *terminated* unless they are members of the new contracting group.... <u>[I]f you hold no other clinical privileges [other than privileges to provide perioperative anesthesia services or vascular access], Medical Staff membership will also be terminated at the effective date of the contract with Michael Pesce and Associates.</u>[16]

The letter did not provide an opportunity for either Comprehensive or its individual physician members to challenge the termination of medical staff memberships and clinical privileges, in accordance with the procedures outlined in Article VII of the Hospital's Bylaws.[17]    Without staff membership or clinical privileges, "Comprehensive's Anesthesiologists will be prohibited from

---

[14] *Id.* (emphasis supplied).

[15] *Id.* ¶ 23.

[16] *Id.* ¶ 24 (emphasis supplied).

[17] *Id.* ¶¶ 25, 26.

providing Anesthesia Services at the Hospital."[18]

Thereafter, on February 8, 2000, Comprehensive received a subsequent letter from the Hospital, stating that it did not intend to terminate the medical staff privileges of Comprehensive's anesthesiologists.   Rather, it stated that plaintiffs could continue to exercise those privileges, "but only if they entered into agreements with Pesce to provide services pursuant to the Hospital's illegal agreement with Pesce."[19] Plaintiffs contend that this position "amounts to a *de facto* termination of [their] privileges,"[20] because it requires them "to participate in Pesce's agreement with the Hospital, which plaintiffs believe to be violative of the Federal Anti-kickback Statute."

Accordingly, plaintiffs seek a judicial determination that the agreement between the Hospital and Pesce constitutes a violation of the Anti-kickback Statute and the Hospital's by-laws.   In their first amended complaint, plaintiffs request declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et *seq.*, and damages as a result of the Hospital's violation of the Anti-kickback Statute and the Bylaws.   Defendant moves to dismiss plaintiffs' first amended complaint in its entirety, arguing that

---

[18] *Id.* ¶ 24.

[19] *Id.* ¶ 36.

[20] *Id.* ¶ 38.

7

plaintiffs lack standing to assert their claims, and that the Anti-kickback Statute does not allow a private right of action.

### III.   DISCUSSION

As an initial matter, the court notes that plaintiffs premise original jurisdiction on the federal Anti-kickback Statute, and the authority of this court to adjudicate plaintiffs' state law claim is asserted as supplemental to the federal question presented.

> This Court has jurisdiction over the subject matter of this lawsuit pursuant to the Federal Anti-kickback Statute, 42 U.S.C. §§ 1320a-7, 1320a-7a, and 1320a-7b. In addition, supplemental jurisdiction is provided to this Court pursuant to 28 U.S.C. § 1367 and 28 U.S.C. § 2201[21].
>
> Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Hospital resides in this judicial district.[22]

Plaintiffs thus do not attempt to invoke jurisdiction on the basis of the parties' diversity of citizenship, see 28 U.S.C. § 1332, nor are the allegations of plaintiffs' first amended complaint sufficient to do so.   "The burden of pleading diversity of citizenship is upon the party invoking federal jurisdiction, and if

---

[21] As discussed in § III.C *infra*, the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, is not an independent jurisdictional grant.   Rather, it merely makes available an additional remedy in cases in which the district court has original jurisdiction by virtue of a federal question, or the parties' diversity of citizenship and the requisite amount in controversy.   *See generally* 10A Wright, Miller & Kane, Federal Jurisdiction and Procedure — Civil 2d §§ 2766, 2767.

[22] *Id.* §§ 4,5.

8

jurisdiction is properly challenged, that party also bears the burden of proof." *Ray v. Bird and Son and Asset Realization Company, Inc.*, 519 F.2d 1081, 1082 (5th Cir. 1975).[23]   Although plaintiffs state that each is a citizen of the State of Alabama, they have not sufficiently detailed defendant's citizenship.   For diversity purposes, the rule for determining corporate citizenship — "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business," 28 U.S.C. § 1332(c)(1) — does not apply to limited partnerships and other unincorporated associations. *See Carden v. Arkoma Associates*, 494 U.S. 185, 189, 110 S.Ct. 1015, 1018, 108 L.Ed.2d 157 (1990).   Unincorporated entities, such as defendant, Crestwood Healthcare, L.P., are not "citizens" at all; rather, the citizenship of all its general and limited partners is dispositive.

> In sum, we reject the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members.  We adhere to our oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of "all the members"....

*Carden*, 494 U.S. at 195, 110 S.Ct. at 1021 (internal citation

---

[23] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

omitted).  Plaintiffs have not provided any information regarding the citizenship of defendant's general and limited partners. Accordingly, this court's original jurisdiction is limited solely to the viability of plaintiffs' claim under the federal Anti-kickback Statute.

## A.    Standing

Defendant has raised the issue of plaintiffs' standing, and the court is obligated to address that question before proceeding to the merits of plaintiffs' claim.  *See Steel Company v. Citizens for a Better Environment*, 523 U.S. 83, 100, 118 S.Ct. 1003, 1016, 140 L.Ed.2d 210 (1998) (holding that Article III standing generally is "an antecedent question," and noting that the Court does not approve "of a doctrine of 'hypothetical jurisdiction' that enables a court to resolve contested questions of law when its jurisdiction is in doubt.  Hypothetical jurisdiction produces nothing more than a hypothetical judgment — which comes to the same thing as an advisory opinion...");  *see also S.J. Groves & Sons Company v. Fulton County*, 920 F.2d 752, 757 (11th Cir. 1991) (noting that "[s]tanding is a jurisdictional prerequisite to a suit in a federal court").

Article III of the United States Constitution limits the

jurisdiction of federal courts to actual "cases" and "controversies." *See* U.S. Const. art. III, § 2, cl. 1; *see also Malowney v. Federal Collection Deposit Group*, 193 F.3d 1342, 1346 (11th Cir. 1999). "The Article III case or controversy requirement sets fundamental limits on the federal judiciary's power in our society. One of the most important of these constitutionally-based limits is the requirement that a litigant have 'standing' to invoke the power of a federal court." *Malowney*, 193 F.3d at 1346 (citing *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984)). Essentially, "[s]tanding is the determination of whether a specific person is the proper party to bring a particular matter to a federal court for adjudication." *See* Erwin Chemerinsky, *Federal Jurisdiction* 56 (3d ed. 1999).

Moreover, the Declaratory Judgment Act gives federal courts discretionary power to issue declarations regarding "the rights and other legal relations of any interested party," so long as the power is exercised in a case involving an "actual controversy." 28 U.S.C. § 2201(a). "The statutory standard for determining whether an 'actual controversy' exists within the meaning of the Declaratory Judgment Act is the same as that under the 'case or controversy' requirement of the Constitution." *Hendrix v. Poonai*,

662 F.2d 719, 721 (11th Cir. 1981) (citing *Aetna Life Insurance Company v. Haworth*, 300 U.S. 227, 239-40, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937)).  For an actual controversy to exist, "the facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Atlanta Gas Light Company v. Aetna Casualty and Surety Company*, 68 F.3d 409, 414 (11th Cir. 1995) (quoting *Maryland Casualty Company v. Pacific Coal & Oil Company*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)).

The party invoking federal jurisdiction must show, "'at an irreducible minimum," that at the time the complaint was filed:

> (1) that [they] have suffered an "injury in fact" — an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and conduct complained of — the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Bennett v. Spear*, 520 U.S. 163, 167, 117 S.Ct. 1154, 1163, 137 L.Ed.2d 281 (1997); *see also Atlanta Gas Light Company*, 414 F.3d at

12

414. Because this action is in its preliminary stages, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Bennett*, 520 U.S. at 168, 117 S.Ct. at 1164.

Defendant argues that this case does not present a present controversy, for two reasons. First, defendant contends that the contract between the Hospital and Michael Pesce & Associates ("Pesce") has not been executed and, thus, plaintiffs "have no rights or interests that require protection." Second, defendant asserts, even if the contract had been executed, plaintiffs are not parties to the contract and, accordingly, they lack standing to challenge its validity. The court disagrees with both contentions and concludes that plaintiffs have alleged sufficient facts to confer standing.

With regard to defendant's first argument, the court notes that plaintiffs notified the court, subsequent to the filing of defendant's motion to dismiss, that the contract between the Hospital and Pesce now has been executed.[24] Even in the absence of such evidence, however, plaintiffs sufficiently alleged in their

---

[24] *See* Doc. no. 42.

.

complaint that the execution of the contract was imminent.[25] Furthermore, the execution of that contract would cause plaintiffs' additional harm.  Specifically, plaintiffs aver that the execution of the contract between the Hospital and Pesce will result in a *de facto* termination of their clinical privileges.[26]  By requiring plaintiffs to enter into an agreement with Pesce in order to continue exercising their privileges, the Hospital has altered plaintiffs' previous privileges in violation of its by-laws.[27]

Secondly, the court rejects defendant's assumption that plaintiffs must be a party to the contract before acquiring standing to challenge its validity.  Here, plaintiffs have alleged actual injury:  namely, the loss of their contractual bid to provide on-site coverage for the Hospital's new obstetrical unit.[28] The Hospital informed plaintiffs that Pesce "was the successful bidder and would receive an <u>exclusive</u> agreement to provide the Anesthesia Services."[29]  As a result of this announcement, plaintiffs contend that they have lost "at least one [employee] who has gone to work for Pesce,"[30] and that their "case volume [has]

---

[25] First Amended Complaint ¶¶ 23-24.

[26] *Id.* ¶ 38.

[27] *Id.* ¶ 56.

[28] *Id.* ¶ 23.

[29] *Id.*

[30] *Id.* ¶ 39.  In its entirety, that paragraph specifies:

declined significantly," because "representatives of the Hospital were telling surgeons practicing at the Hospital that the surgeons could not use Comprehensive's Anesthesiologists to provide anaesthetic services."[31]   Such injuries are sufficiently concrete and particularized to satisfy Article III.   *See generally*, *Tennessee Electric Power Company v. Tennessee Valley Authority*, 306 U.S. 118, 137-38, 59 S.Ct. 366, 369, 83 L.Ed. 543 (1939) (recognizing that injuries are sufficient to confer standing if they are "of property, one arising out of contract, one protected against tortious invasion, or one founded on a statute which confers a privilege"); *CC Distributors, Inc. v. United States*, 883 F.2d 146, 150 (D.C. Cir. 1989) (finding that contractor who lost opportunity to compete for a government contract alleged sufficient injury to confer standing); *Owen of Georgia, Inc. v. Shelby County*, 648 F.2d 1084, 1981 (6th Cir. 1981) (same).

Additionally, plaintiffs have alleged that the injury is

---

As a direct and proximate result of the Hospital's statements regarding its intention to enter into an exclusive provider contract with Pesce, Plaintiffs have already incurred certain damages, including but not limited to (a) the loss of at least one Certified Registered Nurse Anesthetist who has gone to work for Pesce; (b) the loss of certain other employees who have left Comprehensive due to the uncertainty surrounding the ability of Comprehensive's Anesthesiologists to exercise their medical staff privileges at the Hospital; and (c) the costs (including attorney's fees) incurred by Plaintiffs in filing the instant lawsuit.

[31] *Id.* ¶ 31.

15

traceable to defendant and, thus, have satisfied the second standing requirement.   The Hospital, and not a third person, rejected plaintiffs' proposal to provide anesthesia services to the new unit.   The Hospital is the entity that established the bidding criteria that is the subject of this dispute, namely that the successful bidder "shall [not] charge the other for services provided pursuant to this Agreement,"[32] a requirement that plaintiffs contend violates the Anti-kickback Statute.   Moreover, the Hospital limited the exercise of plaintiffs' clinical privileges by requiring them to enter into an agreement with Pesce.

Finally, plaintiffs have alleged that a favorable court decision is likely to remedy their injury.   Plaintiffs argue that "[u]nless and until the question of the legality of the Pesce Contract is determined, Plaintiffs cannot consider the Hospital's offer to continue to exercise their clinical privileges pursuant to the Pesce Contract."[33]

## B.   The Anti-kickback Statute

Defendant contends the Anti-kickback Statute does not allow a private right of action and, accordingly, Count II of plaintiffs' first amended complaint is due to be dismissed.   Although

---

[32] *Id.* ¶ 21.

[33] *Id.* ¶ 45.

plaintiffs filed a response to defendant's motion, they failed to address this specific argument.[34]

Whether a private right of action exists under a federal statute is a matter of congressional intent. *See Thompson v. Thompson*, 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988). "'[U]nless ... congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.'" *Id.* (quoting *Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981)). The requirement of congressional intent "reflects a concern, grounded in separation of powers, that Congress rather than the courts control the availability of remedies for violations of statutes." *Wilder v. Virginia Hospital Association*, 496 U.S. 498, 509 n.9, 110 S.Ct. 2510, 2517 n.9, 110 L.Ed.2d 455 (1990).

Plaintiffs bear the burden of proving that Congress intended to provide a private remedy. *See Suter v. Artist M.*, 503 U.S. 347, 363-64, 112 S.Ct. 1360, 1370, 118 L.Ed.2d 1 (1992). When a statute is silent as to whether it may be enforced by private action, the

---

[34] *See* plaintiffs' brief (doc. no. 35) at 17.

court may examine the four factors set forth in *Cort v. Ash*, 422

U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

> First, is the plaintiff "one of the class for whose
> especial benefit the statute was enacted," —— that is,
> does the statute create a federal right in favor of the
> plaintiff?    Second,   is  there   any   indication   of
> legislative intent, explicit or implicit, either to
> create such a remedy or to deny one?    Third, is it
> consistent   with   the   underlying   purposes   of   the
> legislative   scheme   to   imply   such   a   remedy   for   the
> plaintiff?    And finally, is the cause of action one
> traditionally relegated to state law, in an area
> basically the concern of the States, so that it would be
> inappropriate to infer a cause of action based solely on
> federal law?

*Id.* at 78, 95 S.Ct. at 2088 (internal citations omitted).    The

court is not required, however, to "mechanically trudge through all

four of the factors when the dispositive question of legislative

intent has been resolved." *California v. Sierra Club*, 451 U.S.

287, 302, 101 S.Ct. 1775, 1784, 68 L.Ed.2d 101 (1981) (Rehnquist,

J., concurring); *see also Merrill Lynch, Pierce, Fenner & Smith v.*

*Curran*, 456 U.S. 353, 388, 102 S.Ct. 1825, 1844, 72 L.Ed.2d 182

(1982)   (citing   Rehnquist's   concurrence   in   *California*   with

approval).    For instance, the last two factors "are only of

relevance if the first two factors give indication of congressional

intent to create the remedy." *California*, 451 U.S. at 298, 101

S.Ct. at 1781.

18

After reviewing the language of the Anti-kickback Statute, together with its legislative history, the court concludes that there is no indication that Congress intended to create a private right of action.  The purpose of the statute is "to strengthen the capability of the <u>Government</u> to detect, prosecute, and punish fraudulent activities under the Medicare and Medicaid programs...." 1977 U.S. Code Cong. & Admin. News 3039, 3040 (emphasis supplied).

"In 1987, Congress consolidated the anti-kickback laws for Medicare and state health care programs into § 1128B(b) of the Social Security Act," *Hanlester Network v. Shalala*, 51 F.3d 1390, 1396 (9th Cir. 1995), and "[t]he Secretary of Health and Human Services is charged with the administration of the Medicare program pursuant to 42 U.S.C. § 1395kk." *West Allis Memorial Hospital, Inc. v. Bowen*, 852 F.2d 251, 255 (7th Cir. 1988).  Under 42 U.S.C. § 1320a-7b, a person adjudged guilty of a violation of this statute is subject to criminal penalties:

> (b)   Illegal remunerations
>      (1) whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in case or in kind ... <u>shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both</u>.
>      (2) whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or

rebate) directly or indirectly, overtly or covertly, in
case or in kind to any person to induce such person ...
<u>shall be guilty of a felony and upon conviction thereof,
shall be fined not more than $25,000 or imprisoned for
not more than five years, or both.</u>

42 U.S.C. § 1320a-7b(b)  (emphasis supplied).

Moreover, Congress added § 1320a-7a, the provision providing
for civil monetary penalties, "[b]ecause the Department of Justice
often lacks the resources to pursue cases of fraud against the
Medicaid and Medicare programs, [and] the act allows the Secretary
of Health and Human Services to seek civil remedies as an
alternative to criminal prosecution."  *Chapman v. United States*,
821 F.2d 523, 525 (10th Cir. 1987) (citing S.Rep. No. 139, 97th
Cong., 1st Sess. 461-62 (1981), reprinted at 1981 U.S. Code Cong.
& Ad. News 396, 727-28; H.R. Rep. No. 97-158, 97th Cong., 1st
Sess., Vol. II, 344 (1981)).

> The [civil monetary penalties law], as enacted in 1981,
> was intended to promote an administrative adjunct to
> criminal proceedings as an additional means of
> sanctioning persons who submit false claims for payment
> under the Medicare and Medicaid programs. ...  <u>The
> purpose behind the CMPL is to make the government whole
> for monies paid on fraudulent submissions and the cost of
> investigating such fraudulent submissions</u>.  The purpose
> of the 1987 amendments to the CMPL ... was "to improve
> the ability <u>of the Secretary and the Inspector General of
> the Department of Health and Human Services</u> to protect
> Medicare, Medicaid, Maternal and Child Health Services
> Block Grant, and Title XX Social Services Block Grant
> Programs from fraud and abuse...."

20

*Bernstein v. Sullivan*, 914 F.2d 1395, 1397 (10th Cir. 1990)

(quoting S.Rep. No. 100-109, 100th Cong., 1st Sess., 1-2 (1987),

U.S. Code Cong. & Admin. News 1987, at 682, 683) (emphasis

supplied)).  As the Eleventh Circuit has noted, the civil monetary

penalties provision

> was added to the Social Security Act to discourage fraud
> in the Medicare program.  Specifically, <u>the Act
> authorizes the Secretary of the Department of Health and
> Human Services</u> to impose a $2,000 fine for each item
> submitted for reimbursement when the person submitting
> the claim knew or should have known the item was not
> provided as claimed.  In addition to the fine, the Act
> permits "an assessment of not more than twice the amount
> claimed for each such item or service <u>in lieu of damages
> sustained by the United States or a State agency because
> of such claim</u>."  Finally, the Act <u>authorizes the
> Secretary to bar an individual from participating</u> in the
> Medicare program....

*Mayers v. U.S. Department of Health and Human Services*, 806 F.2d

995, 997 (11th Cir. 1986) (quoting 42 U.S.C. § 1320a-7a (emphasis

supplied)).

Additionally, § 1320a-7a establishes a procedural process by

which the Secretary may obtain relief from an offender.  The

Supreme Court has cautioned that courts should be especially

reluctant to provide additional remedies when a statute has an

existing enforcement mechanism.  *See Transamerican Mortgage

Advisers, Inc. v. Lewis*, 444 U.S. 11, 19, 100 S.Ct. 242, 247, 62

21

L.Ed.2d 146 (1979) (stating that "it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it"); *see also Middlesex County Sewage Authority v. National Sea Clammers*, 453 U.S. 1, 14-15, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981). The elaborate mechanism at issue here provides:

> <u>The Secretary may initiate a proceeding</u> to determine whether to impose a civil monetary penalty, assessment, or exclusion under subsection (a) or (b) of this section <u>only as authorized by the Attorney General pursuant to procedures agreed upon by them</u>. The Secretary may not initiate an action under this section with respect to any claim, request for payment, or other occurrence described in this section later than six years after the date the claim was presented, the request for payment was made, or the occurrence took place. The Secretary may initiate an action under this section by serving notice of the action in any manner authorized by Rule 4 of the Federal Rules of Civil Procedure.

42 U.S.C. § 1320a-7a(c)(1). Moreover, the statute specifies that any review of an adverse decision of the Secretary is made to the United States Court of Appeals.

> Any person adversely affected by a determination of the Secretary under this section may obtain a review of such determination in the United States Court of Appeals for the circuit in which the person resides, or in which the claim was presented, by filing in such court (within sixty days following the date the person is notified of the Secretary's determination) a written petition requesting that the determination be modified or set

22

aside.  ...   Upon  such  filing,  the  court  shall  have jurisdiction  of  the  proceeding  and  of  the  question determined  therein,  and  shall  have  the  power  to  make  and enter  upon  the  pleadings,  testimony,  and  proceedings  set forth  in  such  record  a  decree  affirming,  modifying,  or remanding  for  further  consideration,  or  setting  aside,  in whole  or  in  part,  the  determination  of  the  Secretary  and enforcing  the  same  to  the  extent  that  such  order  is affirmed  or  modified.   No  objection  that  has  not  been urged  before  the  Secretary  shall  be  considered  by  the court,  unless  the  failure  or  neglect  to  urge  the objection  shall  be  excused  because  of  extraordinary circumstances.

42 U.S.C. § 1320a-7a(e).

In  sum,  there  is  no  indication  that  Congress  intended  to provide  individual  plaintiffs  with  a  private  right  of  action  under the  Anti-kickback  Statute.[35]   *Cf*.  The  False  Claims  Act,  31  U.S.C. § 3730(a)-(d) (1994) (giving  the  federal  government,  as  well  as  a private  person,  or  *qui  tam*  plaintiff,  a  right  to  bring  a  cause  of action  against  those  who  submit  false  claims  to  the  government).[36] As  the  Ninth  Circuit  explained:

---

[35] *See generally* Lisa Michelle Phelps, *Calling Off the Bounty Hunters: Discrediting the Use of Alleged Anti-kickback Violations to Support Civil False Claims Actions*, 51 Vand. L. Rev. 1003, 1031 (1998) (stating that "[n]either the text of the anti-kickback statute nor its legislative history suggests that Congress contemplated the possibility that *qui tam* plaintiffs could pursue these claims on behalf of the government.  Instead, Congress created a federal statute providing for criminal penalties and delegated enforcement duties to the Department of Justice.  Because nothing indicates that Congress intended to provide *qui tam* rights in the Anti-kickback statute, and because the statute places enforcement in governmental authorities, no reasonable court could find congressional intent to give private citizens a right to bring *qui tam* claims under the anti-kickback statute itself").

[36] *See generally* Pamela H. Bucy, *Growing Pains: Using the False Claims Act to Combat Health Care Fraud*, 51 Ala. L. Rev. 57 (1999) (discussing the *qui tam* provisions of the False Claims Act).

23

> The Supreme Court has drawn a distinction between statutes whose language focuses on a right granted to a benefitted class of persons — where a private right of action is generally found — and statutes framed as a "general prohibition or command to a federal agency" — where a cause of action is seldom implied.

*Rapid Transit Advocates v. Southern California Rapid Transit District*, 752 F.2d 373, 376 (9th Cir. 1985); *see also City of Evanston v. Regional Transportation Authority*, 825 F.2d 1121, 1124 (7th Cir. 1987) (citing *Rapid Transit* with approval).  This statue is nothing more than a "general prohibition or command to a federal agency."  Accordingly, it does not give a private right of action. *See West Allis*, 852 F.2d at 255 (concluding that no private right of action exists under the Anti-kickback statute and concluding that plaintiff lacked standing).

## C.    The Declaratory Judgment Act

Plaintiffs ask this court to declare "(a) the legality of the Pesce Contract and (b) whether the Hospital's entry into the Pesce Contract violates the Bylaws."[37]  To the extent that plaintiffs' request is premised on the Anti-kickback statute, plaintiff's claim for declaratory relief is due to be dismissed.  "[T]he Declaratory Judgment Act does not enlarge the jurisdiction of the federal courts but rather 'is operative only in respect to controversies

---

[37] First Amended Complaint ¶ 47.

24

which are such in the constitutional sense.... Thus the operation

of the Declaratory Judgment Act is procedural only.'" *Wendy's*

*International, Inc. v. City of Birmingham*, 868 F.2d 433, 435 (11th

Cir. 1989) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227,

240, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937)). The Declaratory

Judgment Act is but an attempt by Congress "to place a remedial

arrow in the district court's quiver." *Wilton v. Seven Falls Co.*,

515 U.S. 277, 288, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995).

> [By enacting the Declaratory Judgment Act,] Congress
> enlarged the range of remedies available in the federal
> courts but did not extend their jurisdiction. When
> concerned as we are with the power of the inferior
> federal courts to entertain litigation within the
> restricted area to which the Constitution and Acts of
> Congress confine them, "jurisdiction" means the kinds of
> issues which give right of entrance to federal courts.
> Jurisdiction in this sense was not altered by the
> Declaratory Judgment Act.... The Declaratory Judgment
> Act allow[s] relief to be given by way of recognizing the
> plaintiff's right even though no immediate enforcement of
> it [is] asked. But the requirements of jurisdiction —
> the limited subject matters which alone Congress has
> authorized the District Courts to adjudicate — were not
> impliedly repealed or modified.

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72, 70

S.Ct. 876, 878-79, 94 L.Ed. 1194 (1950). Therefore, declaratory

relief may be sought only where an independent ground of

jurisdiction exists. Because that requirement is lacking in this

case, as plaintiffs' have established neither a private right of

action under the Anti-kickback Statute nor diversity jurisdiction over the state law claim for breach of the Hospital's bylaws, this claim also is due to be dismissed.

## D. Plaintiffs' State Law Claim

In cases where the court's jurisdiction is based solely upon a federal question, the district court has discretion to entertain state claims that are pendant to the federal claim. *See* 28 U.S.C. § 1367(a). The district court may decline to exercise supplemental jurisdiction when:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). As the Supreme Court has observed:

> a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendant state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction

26

by dismissing the case without prejudice.

*Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 349-50, 108 S.Ct. 614, 618, 98 L.Ed.2d 720 (1988) (citing *Mine Workers v. Gibbs*, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon*, 484 U.S. at 350 n.7, 108 S.Ct. at 619 n.7; *see also L.A. Draper & Son V. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984) (stating that "if the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of state claims").

Here, plaintiffs' federal claims have been eliminated at an early stage in the litigation, prior to the commencement of discovery. Additionally, plaintiffs' state law claim raises complex and novel issues of state law,[38] "something the courts of Alabama are in the best position to undertake and, for reasons of

---

[38] Plaintiffs conceded in their brief in support of their motion for injunctive relief that "[t]he Alabama courts have not decided the specific issue of whether medical staff bylaws constitute a binding contract." (Plaintiffs' brief at 23.)

federalism, should undertake in this sensitive area." *Nolin v. Isbell*, No. 99-10040, 2000 WL 313325, at *5 (11th Cir. Mar. 28, 2000).   Therefore, the balance of factors weigh in favor of declining supplemental jurisdiction, and this court exercises its discretion to dismiss plaintiffs' state claim.

### IV.   CONCLUSION

Based on the foregoing, the court concludes that defendant's motion to dismiss is due to be granted in part, and plaintiffs' federal claims dismissed, because no private right of action exists under the Anti-kickback Statute.   The court also declines to exercise supplemental jurisdiction over plaintiffs' state law claim for breach of the Hospital's by-laws, because "the claim raises a novel or complex issue of State law," and this court has dismissed all claims over which it allegedly had original jurisdiction. *See* 28 U.S.C. §§ 1367(c)(1), (3).   An order consistent with this memorandum opinion will be entered contemporaneously herewith.

**DONE** this 26th day of April, 2000.

_____
United States District Judge